UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OMAR BERMUDEZ,<br><br>        Plaintiffs,<br><br>    v.<br><br>CALIBER HOME LOANS, INC.,<br><br>        Defendant. | No. 2:16-cv-01570-MCE-KJN<br><br>**MEMORANDUM AND ORDER** |

      Plaintiff Omar Bermudez ("Plaintiff") initiated this action against Defendant Caliber Home Loans, Inc. ("Defendant") on July 10, 2016, and filed an Application for a Temporary Restraining Order and/or Preliminary Injunction (ECF No. 3) that same day. By way of that application, Plaintiff seeks to enjoin the July 15, 2016, sale or attempted sale of real property located at 854 Oak Lane, Rio Linda, California, 95673 (the "Property"). Defendant has filed an Opposition to Plaintiff's Application, and Plaintiff has filed a Reply. ECF Nos. 13, 20. A hearing on the matter was held before the Court at 2:00 p.m. on Thursday, July 14, 2016. Having considered the written record in its entirety and the oral arguments of counsel, the Court hereby GRANTS Plaintiff's Application.

///

///

1

## BACKGROUND[1]

Plaintiff purchased the Property in 2005, ostensibly by obtaining a loan that is now serviced by Defendant.  Plaintiff refinanced his primary mortgage in 2007 and continued making payments for approximately two more years before he defaulted on his obligation.  It appears from the property profile that Plaintiff submitted in support of his Application that a notice of default was subsequently recorded on or about February 9, 2016, and a trustee's sale was scheduled for July 15, 2016.

In response, Plaintiff submitted an application for a loan modification to Defendant on February 15, 2016.  According to that application, Plaintiff's gross income at the time was $2,500 per month.  That application was denied for lack of income on March 18, 2016, and Defendant advised Plaintiff that he had until April 17, 2016, to appeal the decision.  Plaintiff did not appeal.

On May 21, 2016, Plaintiff instead submitted a new loan modification application, this time reflecting his updated monthly income of $5,950.  On June 2, 2016, Plaintiff's counsel contacted Defendant and was informed that the application was complete and had been sent to an underwriter.  The following week, counsel called again and was told that the application was still being reviewed by the underwriter.  Still having heard nothing by July 7, 2016, counsel called one more time and was at this point advised that the modification had been denied on June 16, 2016, and that Defendant would not entertain an appeal since it was too close to the date of the Property's scheduled sale. Plaintiff filed suit in this Court three days later.

## STANDARD

The purpose of a temporary restraining order is to preserve the status quo pending the complete briefing and thorough consideration contemplated by full proceedings pursuant to a preliminary injunction.  See Granny Goose Foods, Inc. v.

---

[1] The facts material to the instant Application are undisputed.

Teamsters, 415 U.S. 423, 438-39 (1974) (temporary restraining orders "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer"); see also Reno Air Racing Ass'n., Inc. v. McCord, 452 F.3d 1126, 1131 (9th Cir. 2006).

Issuance of a temporary restraining order, as a form of preliminary injunctive relief, is an extraordinary remedy, and Plaintiffs have the burden of proving the propriety of such a remedy. See Mazurek v. Armstrong, 520 U.S. 968, 972 (1997). In general, the showing required for a temporary restraining order and a preliminary injunction are the same. Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc., 240 F.3d 832, 839 n.7 (9th Cir. 2001).

The party requesting preliminary injunctive relief must show that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Resources Defense Council, 555 U.S. 7, 20 (2008); Stormans, Inc. v. Selecky, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting Winter). The propriety of a TRO hinges on a significant threat of irreparable injury that must be imminent in nature. Caribbean Marine Serv. Co. v. Baldridge, 844 F.2d 668, 674 (9th Cir. 1988).

Alternatively, under the so-called sliding scale approach, as long as the Plaintiffs demonstrate the requisite likelihood of irreparable harm and show that an injunction is in the public interest, a preliminary injunction can still issue so long as serious questions going to the merits are raised and the balance of hardships tips sharply in Plaintiffs' favor. Alliance for Wild Rockies v. Cottrell, 632 F.3d 1127, 1131-36 (9th Cir. 2011) (concluding that the "serious questions" version of the sliding scale test for preliminary injunctions remains viable after Winter).

///

///

///

## ANALYSIS

The practice by mortgage lenders of negotiating with homeowners in default on their applications for a loan modification, while simultaneously advancing the foreclosure process, is commonly referred to as "dual tracking." Dual tracking has been heavily criticized by both state and federal legislators. In July 2012, California passed legislation referred to as the California Homeowner Bill of Rights, which prohibits such practices. That Bill of Rights went into effect the following year and offers homeowners greater protection during the foreclosure process. Cal. Civ. Code § 2923.6(b). Section 2923.6(b) states that "it is the intent of the legislature that the mortgage servicer offer the borrower a loan modification or work out a plan if such a modification or plan is consistent with its contractual or other authority." The statute goes on to provide that:

> If a borrower submits a complete application for a first lien loan modification offered by, or through, the borrower's mortgage servicer, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not . . . conduct a trustee's sale, while the complete first lien loan modification application is pending. A mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not . . . conduct a trustee's sale until any of the following occurs:
>
> (1) The mortgage servicer makes a written determination that the borrower is not eligible for a first lien loan modification, and any appeal period pursuant to subdivision (d) has expired.

Id., § 2923.6(c). "If the borrower's application for a first lien loan modification is denied, the borrower shall have at least 30 days from the date of the written denial to appeal the denial and to provide evidence that the mortgage servicer's determination was in error." Id., § 2923.6(d). It is clear then that, since Plaintiff's second loan modification was not denied until June 16, 2016, going forward with the July 15, 2016, trustee's sale would violate the provisions of section 2923.6(c) and (d).

In its Opposition, Defendant does not dispute the foregoing, but argues instead that it was not required to consider Plaintiff's second loan modification application in the first place and that the timing provisions of section 2923.6(c) and (d) thus do not apply.

4

Defendant bases its argument on section 2923.6(g), which states:

> In order to minimize the risk of borrowers submitting multiple applications for first lien loan modifications for the purpose of delay, the mortgage servicer shall not be obligated to evaluate applications from borrowers who have already been evaluated or afforded a fair opportunity to be evaluated for a first lien loan modification prior to January 1, 2013, or who have been evaluated or afforded a fair opportunity to be evaluated consistent with the requirements of this section, unless there has been a material change in the borrower's financial circumstances since the date of the borrower's previous application and that change is documented by the borrower and submitted to the mortgage servicer.

According to Defendant, since it provided Plaintiff a right to appeal the denial of his first application, and since Defendant was not bound to consider the second application, it was also not thereafter bound to permit Plaintiff time to <u>appeal</u> the second denial prior to holding the trustee's sale.

There are at least two problems with this argument.  First, Plaintiff's argument assumes that there was no "material change in the borrower's financial circumstances" between the time of the first and second modification applications.  As Plaintiff's applications themselves show, however, his income had purportedly almost doubled in the interim.  It thus appears that Defendant very well may have been bound to consider the second application despite its arguments to the contrary.  Second, regardless of whether Defendant was bound to consider Plaintiff's second modification application, it still chose to do so.  Nothing in the statutory language cited by Defendant suggests that it could both consider the merits of the second application and at the same time refuse to comply with the statutory requirements of section 2923.6(c) and (d).  Once it considered the second application and denied it on the merits, the timing protections attached.  Defendant's position might be more plausible if it had refused to consider Plaintiff's second application in the first place; of course, given the purportedly dramatic increase in Plaintiff's monthly income, Defendant's reliance on 2923.6(g) to have declined to consider the subsequent application might have been difficult.  Accordingly, in light of the foregoing, Plaintiff has adequately shown that he is likely to succeed on the merits of his

claim in light of California's new Homeowners' Bill of Rights.

Plaintiff has also met the remaining factors of the preliminary injunction standard. He has adequately demonstrated the requisite "irreparable harm" by alleging that if he loses his home, he will be homeless with "terrible" credit and lacking the means to find suitable housing elsewhere. Bermudez Decl. at 2. Plaintiff further contends that his home is "unique and irreplaceable" such that no amount of money can compensate for the wrongful loss of the Property. Id. Further, the balance of equities tips in Plaintiff's favor as a TRO in this instance merely delays Defendant's right to foreclose. Finally, an injunction is in the public's interest as it enforces a recently enacted law designed to protect the public.

## CONCLUSION

For all the above reasons, the Court GRANTS Plaintiff's Application for a Temporary Restraining Order and/or Preliminary Injunction.[2] ECF No. 3. A hearing on the issuance of a preliminary injunction is set for July 28, 2016, at 2:00 p.m. in Courtroom No. 7. Defendants and their agents, servants, employees and representatives, are ordered to show cause at that hearing why they should not be enjoined from continuing to foreclose on Plaintiff's real property located at 854 Oak Lane, Rio Linda, California, 95673, during the pendency of this lawsuit. In the meantime, pending that hearing and determination of preliminary injunction, Defendants, and each of them, along with their officers, agents, employees, representatives and all persons acting in concert or participating with them, are restrained from engaging in or performing directly or indirectly any of the following acts: advertising, selling, transferring, conveying, foreclosing upon, evicting or any other conduct adverse to Plaintiff regarding their real property located at 854 Oak Lane, Rio Linda, California,

---

[2] While Plaintiff's Motion is denominated as being made on an ex parte basis, the docket in this matter shows that Defendant appeared in this matter and filed an Opposition. The Court therefore concludes that notice was in fact provided.

1  95673.

2        Plaintiffs' opening brief in support of preliminary injunction is due on Wednesday,
3  July 20, 2016. Opposition by Defendant, if any, must be submitted not later than
4  Monday, July 25, 2016 and Plaintiff's deadline for filing a reply is Wednesday, July 27,
5  2016.

6        No bond shall be required.

7        IT IS SO ORDERED.

8  Dated: July 14, 2016

                                        MORRISON C. ENGLAND, JR
                                        UNITED STATES DISTRICT JUDGE